**SO ORDERED.**

**SIGNED this 11 day of October, 2006.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **CHARLES H. SLEDGE** | **03-02654-8-RDD** |
| **MARGARET L. SLEDGE,** | |
| DEBTORS | |

### ORDER TO DISGORGE FEES

The matter before the court is the debtors' motion to disgorge fees paid to Mr. Peter Gemborys for legal services rendered in the above-captioned matter and in the adversary proceedings filed under this case file. The court held a hearing in Wilson, North Carolina which began on September 27, 2006 and concluded on October 2, 2006.

### FINDINGS OF FACT

The debtors paid Mr. Gemborys $1400.00 for representing them in the filing of a bankruptcy petition pursuant to chapter 13 of the Bankruptcy Code. Mr. Gemborys met with Mr. Sledge regarding the filing of the petition. Mr. Gemborys provided Mr. Sledge with information regarding the different chapters of bankruptcy for Mr. Sledge to share with Mrs. Sledge. The debtors returned to Mr. Gemborys'

office and met with his paralegal, Mary Tatum, regarding the completion and signing of the petition on March 3, 2003. Mrs. Sledge provided Ms. Tatum with the information requested, including bank statements which showed deposits made from a trust created by Mrs. Sledge's grandfather and tax returns which showed income received by Mrs. Sledge from the trust. When Mrs. Sledge provided Ms. Tatum with information regarding a judgment owed to BB&T, she was unable to provide the exact amount of the debt. Ms. Tatum noted the amount of the debt as "Unknown" on the petition. Ms. Tatum explained to the debtors that there was a formula which had to be used to determine if the plan was feasible. Ms. Tatum was concerned about the feasibility of the plan because of the debtors' insufficient income. However, when Mrs. Sledge provided her with documentation of the trust income, Ms. Tatum informed her that the trust income gave them just enough income to propose a confirmable plan. The debtors were missing some necessary information, including amounts of federal and state tax liens. Ms. Tatum indicated that the petition could not be completed until that information was provided. The debtors agreed that Mr. Sledge would bring the information to Ms. Tatum at a later time. Ms. Tatum requested that the debtors sign the signature pages of the petition prior to her preparing the petition so that it could be filed promptly upon Mr. Sledge providing the necessary information to complete the petition. The debtors did not read the petition at the time of signing, nor were they instructed to do so. Mr. Gemborys did not meet with Mrs. Sledge on that day or at any time prior to the filing of the petition. Mr. Gemborys did not review the petition with the debtors. The debtors were not provided a copy of the petition at that time. The petition was filed on March 24, 2003.

After receiving the notice regarding the 341 meeting, Mrs. Sledge contacted Ms. Tatum to determine if the debtors needed to meet with Mr. Gemborys prior to the meeting. Ms. Tatum instructed

Mrs. Sledge that a meeting was not necessary and that they should just appear at the noticed meeting. Mrs. Sledge had not met Mr. Gemborys prior to the date of the 341 meeting. The chapter 13 meeting of creditors was held on May 5, 2003, after which the trustee filed a motion to confirm the debtors' plan as proposed. On July 15, 2003, BB&T filed a motion to dismiss and objection to chapter 13 plan because the debtors exceeded the debt limitations for chapter 13 because of the amount of the debt owed to BB&T. As a result of this motion and objection, the trustee filed a motion to dismiss based upon the failure of the debtors to file a confirmable plan. Thereafter, Mr. Sledge met with Mr. Gemborys who suggested that Mr. Sledge meet with the firm of Algernon C. Butler, Jr.'s firm to create a conflict should Mr. Butler be appointed trustee upon conversion to chapter 7. After Mr. Sledge consulted with Bradford Sanders, an attorney in the offices of Butler & Butler, the debtors paid Mr. Gemborys $500.00 to convert their case to chapter 7. A notice of conversion was filed on August 19, 2003.

The debtors were provided a copy of their petition for the first time at the chapter 7 meeting of creditors on September 15, 2003, but had insufficient time to review it prior to their case being called. At the 341 meeting, Mr. Janvier, the trustee assigned to the debtors' case, asked if the debtors had read their petition. The debtors stated that they had, although all Mrs. Sledge had reviewed was the income amount. Mr. Janvier also asked if everything in the petition was true and accurate. The debtors stated that the petition was true and accurate. At the end of the meeting, Mr. Janvier requested that the debtors provide him with tax returns and bank statements for the two years preceding the filing of their petition.

Immediately after the 341 meeting, Mrs. Sledge discovered the omission of the existence of her trust from Schedule B, Line 19. The debtors notified Mr. Gemborys of the error prior to leaving the building where the 341 meeting was conducted. They requested that Mr. Gemborys notify Mr. Janvier of the

3

omission. Mr. Gemborys instructed the debtors to contact his assistant, Ms. Tatum, about the errors so that she could file an amendment to their petition. Mrs. Sledge requested that they find Mr. Janvier to explain the omission to him, but Mr. Gemborys indicated that Mr. Janvier had already left and could not be reached. Mrs. Sledge contacted Ms. Tatum. Mrs. Sledge was assured that the errors could be corrected by the filing of an amendment. Upon reviewing the petition further, Mrs. Sledge noticed income listed as pension income on the petition rather than the trust income. Mrs. Sledge again called Ms. Tatum to request that error also be corrected. Mrs. Sledge gathered the documents requested by Mr. Janvier and provided them to Mr. Gemborys within a few days. However, Mrs. Sledge did not have any further conversation with Mr. Gemborys about the necessary amendments to the petition. Mr. Janvier testified that, had he been notified of the errors in the petition at the 341 meeting or shortly thereafter, he would not have been inclined to file an adversary proceeding objecting to the debtors' discharge. As a result of the complaint objecting to the discharge, Mrs. Sledge settled the case by agreeing to pay Mr. Janvier otherwise nonexempt trust income for a period of seven years.

On October 16, 2003, Mr. Gemborys sent a letter to Mr. Janvier, providing him with the requested tax returns and bank statements, and enclosing copies of the amended schedules which had been filed to correct the omission of the trust income and existence of the trust. On October 21, 2003, Mr. Gemborys filed amended schedules B & I and an amended Statement of Financial Affairs, without the signature of the debtors. Mr. Gemborys indicated that Schedule B had been amended "to state the female debtor's interests in nonbankruptcy estate property, i.e., spendthrift trust(s). . ." On November 18, 2003, Mr. Janvier filed a motion to take a Rule 2004 examination of the debtors. The motion was granted on November 19, 2003. The debtors appeared at Mr. Janvier's office on December 3, 2003 for the 2004

examination. Mr. Gemborys did not meet with the debtors prior to the date of the exam in preparation for the exam. Immediately prior to the exam, Mr. Gemborys asked Mr. Sledge, in his testimony, not to disclose Gemborys' request that the debtor meet with Algernon Butler, Jr. to create a conflict.

Based upon the omission of the trust income from the petition, Mr. Janvier filed two adversary proceedings against the debtors. On January 12, 2004, he filed an adversary proceeding objecting to the discharge of the debtors because of their willful failure to disclose the existence of the trust and the income received from the trust. After receiving notice of the adversary proceeding, Mrs. Sledge made numerous phone calls to Mr. Gemborys' office. Mr. Gemborys never returned the calls of Mrs. Sledge to explain the possible consequences of the adversary proceeding. After several days of attempting to contact Mr. Gemborys by telephone, Mrs. Sledge faxed a letter to him on January 23, 2004, requesting an update on the status of the debtors' case. Mrs. Sledge testified that she was most successful in receiving a response from Mr. Gemborys when she faxed letters to him. On February 10, 2004, Mr. Janvier filed an adversary proceeding complaint for turnover of trust funds. Upon receipt of that adversary proceeding, Mrs. Sledge met with Mr. Gemborys. She gave the name of the banker in Kentucky who administers the trust and the name of the bank's attorney to Mr. Gemborys. The debtors paid Mr. Gemborys $375.00 total for representation in each of the adversary proceedings. Mr. Gemborys filed answers to both adversary proceeding complaints on behalf of the debtors. The debtors were not given an opportunity to review the answers or to assist with the preparation of the answers in either of these cases.

In the adversary proceeding regarding the trust corpus, Mr. Gemborys filed a motion for summary judgment. After a hearing and additional time for the debtors to file a memorandum regarding the trust corpus issue, the court entered an order on July 15, 2004, denying the motion for summary judgment filed

by Mr. Gemborys on behalf of the debtors and granting summary judgment in favor of Mr. Janvier *sua sponte*, ruling that the trust corpus was property of the estate. Mrs. Sledge was not made aware of the hearing on the motion for summary judgment. A copy of the court's order was mailed to Mr. Gemborys on the date it was entered. Mr. Gemborys allegedly mailed a letter to Mr. and Mrs. Sledge on July 19, 2004 notifying them of the entry of the judgment and their right to file an appeal. Mr. Gemborys filed a notice of appeal in the adversary proceeding on July 29, 2004, more than 10 days after the entry of the court's order. On July, 29, 2004, Mrs. Sledge faxed a letter to Mr. Gemborys requesting answers about the consequences of the appeal, his representation, and the status of the hearing on the appeal. On August 17, 2004, Mr. Janvier filed a motion to dismiss the appeal because of its untimeliness and the failure of the debtors to seek an extension of time to file the notice of appeal. Mrs. Sledge first learned about the failure of Mr. Gemborys to file a timely notice of appeal in a letter from the court dated August 17, 2004. After numerous attempts at contacting Mr. Gemborys, he indicated to Mrs. Sledge in a letter dated August 19, 2004, that he would perfect the appeal for her upon receipt of $5000.00. Mr. Gemborys' letter also mentions the letter from the court, which he refers to as "self-explanatory." On August 24, 2004, Mrs. Sledge paid Mr. Gemborys $1250.00 to pursue the appeal, after his assurance that the appeal would move forward despite the untimeliness of his filing. No motion for extension of time for filing the notice of appeal under Rule 8002 was made. On August 30, 2004, Mr. Gemborys filed a designation of items to be included in the record on appeal and statement of issues to be presented on appeal. The court docket reflects that responses to Mr. Janvier's motion to dismiss were due by September 9, 2004. On October 6, 2004, Mr. Gemborys filed an objection to Mr. Janvier's motion to dismiss filed on August 17, 2004. On October 8, 2004, Mr. Janvier filed a reply to Mr. Gemborys' objection. On October 20, 2004, the

United States District Court entered an order dismissing the appeal because it was filed in an untimely manner and because of the failure to seek an extension of time.

On November 17, 2004, the trial of the adversary proceeding regarding the trustee's objection to discharge began. The case was continued to allow the debtors to obtain new counsel. On February 10, 2005, the hearing was continued with the debtors represented by Mr. John Bircher. Following testimony on that date, the debtors reached a settlement with Mr. Janvier, which allowed them to receive their discharge. The settlement required Mrs. Sledge to pay to the trustee a portion of her otherwise nonexempt income from the trust for a period of seven years in exchange for her debts being discharged.

Mrs. Sledge testified that, on numerous occasions, she made telephone calls to Mr. Gemborys that were not returned. In response, Mrs. Sledge faxed letters to Mr. Gemborys on the following dates: January 23, 2004, July 29, 2004, August 20, 2004 (two faxes on this date). One of the faxes on August 20, 2004 indicated that, as of August 19, 2004, Mrs. Sledge's attorney in Kentucky had left two messages for Mr. Gemborys, neither of which had been answered by Mr. Gemborys.

## DISCUSSION

**Reasonableness of Fees**:

The debtors move the court to disgorge the fees paid to Mr. Gemborys pursuant to 11 U.S.C. § 329 and Bankruptcy Rule 2017. 11 U.S.C. § 329(b), in referring to the compensation of attorneys, states

> If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to –
>     (1) the estate, if the property transferred –
>         (A)    would have been property of the estate; or
>         (B)    was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

>     (2) the entity that made such payment.

Rule 2017 allows the court, upon motion, to determine whether any payment made by the debtors to an attorney, either before or after entry of an order for relief, is excessive.

In determining the reasonableness of the fees paid to Mr. Gemborys by the debtors in this case and the related adversary proceedings, the court should review the actions of Mr. Gemborys in light of his professional responsibility to his clients. See In re Soulisak, 227 B.R. 77, 82 (Bankr. E.D. Va. 1998) ("In addition to state law sanctions, Bankruptcy Code § 329 permits unethical conduct to serve as a factor considered in analyzing the reasonableness of legal fees paid by a debtor."(citations omitted)).

The North Carolina State Bar Rules of Professional Conduct provide a basis by which an attorney's actions may be measured to determine reasonableness. Rule 1.1 requires attorneys to render competent representation, which includes thoroughness and preparation. Rule 1.3 requires "reasonable diligence and promptness in representing a client." Comment 4 to Rule 1.3 states:

> Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved. If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so. For example, if a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client and the lawyer and the client have not agreed that the lawyer will handle the matter on appeal, the lawyer must consult with the client about the possibility of appeal before relinquishing responsibility for the matter. *See* Rule 1.4(a)(2). Whether the lawyer is obligated to prosecute the appeal for the client depends on the scope of the representation the lawyer has agreed to provide to the client. *See* Rule 1.2.

Rule 1.4 requires prompt and reasonable communication between the attorney and his client regarding all aspects of the client's case.

Based on the foregoing Rules of Professional Conduct, the court finds that when a person hires an attorney, he or she is entitled to a certain level of professional services and those services are to be rendered in a competent manner. An attorney should regularly communicate with his clients to insure that the clients understand the impact and scope of their case and the consequences of certain actions that may be taken in the case. There is a professional standard of care that must be met by the reasonably prudent attorney. That professional standard of care requires attorneys practicing in this court to meet with each debtor personally and review the petition with the debtor prior to filing to insure the correctness of the information contained therein and the client's comprehension of the seriousness and consequences of filing the petition. It is not sufficient for the debtor to meet only with the paralegal unless an exceptional or emergency situation exists. The attorney should provide a copy of any and all paperwork, including the petition, contemporaneously with the final review, signing and filing of the petition. In addition to the requirements of the Rules of Professional Conduct Rule 1.3, the Local Rules of this court require attorneys to "remain the attorney of record for all purposes, including the representation of the debtor in all matters that arise in conjunction with the proceeding, until the case is closed or the attorney is relieved upon application and court order." E.D.N.C. LBR 9011-1.

In this case, Mr. Gemborys failed to properly communicate with his clients and failed to carry out this case in a proper and timely manner. Mr. Gemborys delegated the responsibility of preparing the petition, meeting with the clients and reviewing the petition with them to his paralegal. Mr. Gemborys failed to properly supervise his paralegal. The paralegal allowed Mrs. Sledge to sign the signature pages of the

9

petition before the petition was prepared. Mr. Gemborys failed to provide the clients with a copy of the bankruptcy petition until immediately prior to their chapter 7 meeting of creditors. He failed to timely and properly inform Mr. Janvier of the omissions and misrepresentations in the bankruptcy petition. This information should have been provided to Mr. Janvier immediately upon discovery, especially with regard to the omission of the trust. He failed to properly communicate with Mrs. Sledge regarding his filing of the answers in both adversary proceedings. He failed to properly advise Mrs. Sledge regarding the summary judgment hearings and the consequences of those hearings. He failed to properly communicate with his client in regard to the appeal of the adversary proceeding dealing with the trust and the adverse decision in that matter. He failed to competently handle matters with regard to the appeal. He accepted $1250.00 after expiration of the time for designating or properly providing the items necessary to perfect the appeal, and did not file motions for extensions of time to give notice of appeal and the filings necessary to perfect the appeal.

**Failure to file statement of compensation**:

In addition to the requirements of reasonableness found in 11 U.S.C. § 329(b), § 329(a) requires attorneys to:

> file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

In this case, Mr. Gemborys admits that he received $1400.00 for the original filing of the petition under chapter 13, which was disclosed in the petition. In addition to that fee, Mr. Gemborys received $500.00 for the conversion of the debtors' case to chapter 7, $375.00 for representation of the debtors

in the adversary proceeding objecting to discharge, $375.00 for representation of the debtors in the adversary proceeding for turnover of the trust, and $1250.00 for representation of the debtors during the appeal. The court docket in this case reflects no filings by Mr. Gemborys disclosing the compensation received from the debtors or the source of the compensation received after the filing of the petition, as required by § 329(a). Although the Bankruptcy Code does not specify the remedy for failure to comply with the requirements of § 329(a), "in cases involving an attorney's failure to disclose his fee arrangement under § 329 or Rule 2016 . . . the courts have consistently denied all fees." In re Hooper, No. 93-11599-AB, 2001 WL 34054526, at *10 (Bankr. E.D. Va. Oct. 29, 2001) (quoting Mapother & Mapother v. Cooper (In re Downs), 103 F.3d 472, 478 (6th Cir. 1996)).

### **Sanction of Attorney's Fees**

At the conclusion of the hearing, debtors' counsel requested the court award him attorney's fees for the representation provided by him in this matter. 11 U.S.C. § 105(a) states

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The plain language of this statute indicates "that a court of bankruptcy has authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code." In re Asbill, No. CIV. A. 98-05819-W., 1999 WL 33486100, at *3 (Bankr. D.S.C. February 1, 1999). Other courts have found that § 105 allows a bankruptcy court to enter sanctions for abuse of judicial process. See Matter of Volpert, 110 F.3d 494, 501 (7th Cir. 1997); Matter of Rimsat, Ltd., 229 B.R. 914, 921 (Bankr. N.D. Ind. 1998); Knepper v. Skekloff, 154 B.R. 75, 80 (N.D. Ind. 1993). In addition to § 105(a), "[i]t is well-

recognized . . . that courts have the inherent authority to impose sanctions upon counsel who is found to have acted in bad faith, vexatiously, wantonly or for oppressive reasons." In re Heck's Properties, Inc., 151 B.R. 739, 765 (S.D. W.Va. 1992). See also Chambers v. NASCO, Inc., 501 U.S. 32, 43-44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

This court believes that the imposition of attorney's fees against the negligent attorney prevents an abuse of the bankruptcy process. Disgorgement of fees and liability for the attorney's fees and costs of the movant creates an economic and professional incentive to all attorneys practicing in the bankruptcy court to follow not only the Bankruptcy Code and Bankruptcy Rules, but also the Rules of Professional Conduct, and to provide a level of professional service commensurate with the standards of practice in the Eastern District of North Carolina.

The court further believes that the imposition of attorney's fees in disgorgement actions such as this will encourage attorneys to seek relief when they observe ethical violations, negligence, or irresponsibility on the part of other attorneys. The Rules of Professional Conduct of the North Carolina State Bar require attorneys to maintain the integrity of the profession by bringing ethical violations to the attention of the State Bar or "the court having jurisdiction over the matter." Rule 8.3. Typically, the economic and personal costs of bringing such actions would outweigh the monetary recovery for the moving clients and their counsel. Therefore, the court finds that if a movant is successful on a motion for fee disgorgement in a case of this nature, the moving party should be allowed to file an application for reasonable fees for services rendered in support of the motion to disgorge. Attorneys have a professional duty to bring such motions to fulfill their ethical obligations, and now have an economic incentive as well.

## CONCLUSION

Because of Mr. Gemborys' failure to maintain the professional standard of care of a reasonably prudent attorney in this case, his failure to adhere to the standards of conduct set forth in the Rules of Professional Responsibility, and his failure pursuant to § 329(a) to disclose the fees paid by the debtors for their representation, Mr. Gemborys is ordered to reimburse Mr. and Mrs. Sledge in the amount of $2500.00 for fees paid. 11 U.S.C. § 329(b) provides for return of payment to the trustee in instances where the funds would have been property of the bankruptcy estate. Therefore, Mr. Gemborys is ordered to transfer $1400.00 to Mr. Janvier for fees paid by the Sledges prior to the filing of the petition, which would have been part of the bankruptcy estate.

In this case, Mr. John Bircher, counsel for the debtors has submitted a report and application for approval of compensation and allocation of costs. After reviewing the application, the court orders Mr. Gemborys to pay Mr. Bircher $9,662.45 in fees and $1,169.95 in expenses, for a total of $10,832.40, which represents Mr. Bircher's reasonable fees and expenses in the pursuit of this matter.

Mr. William Janvier, attorney for the trustee for the estate has submitted a report and application for approval of compensation and allocation of costs. After reviewing the application, the court orders Mr. Gemborys to pay Mr. Janvier $2,260.00, which represents Mr. Janvier's reasonable attorney fees in the pursuit of this matter.

All payments as set forth above shall be made by Mr. Gemborys on or before the thirtieth day after the entry of this order.

**SO ORDERED**.

**END OF DOCUMENT**